**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SARAH HOGAN, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| -vs- | ) Case No.: 1:21-cv-03628 |
| THE BLACKSTONE GROUP INC., | )<br>) |
| Defendant. | )<br>)<br>) |

**DEFENDANT BLACKSTONE'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

                                                                               **Page**

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

       A.       Statutory Background ..................................................................................2
       B.       Hogan's Allegations.....................................................................................3

LEGAL STANDARD.........................................................................................................4

ARGUMENT ......................................................................................................................5

I.       PLAINTIFF HAS NOT SUFFICIENTLY PLED A VIOLATION OF GIPA. ...................5

       A.       GIPA Does Not Prohibit "Obtaining" Genetic Information. ................................5
       B.       Plaintiff Does Not Allege Any Improper Disclosure By Blackstone. ....................8

II.      PLAINTIFF CANNOT APPLY GIPA EXTRATERRITORIALLY. ...............................10

CONCLUSION.................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. City of Indianapolis*,
 742 F.3d 720 (7th Cir. 2014) ...................................................................................4, 5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................4, 5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
 835 N.E.2d 801 (Ill. 2005) ................................................................................2, 10, 11

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)......................................................................................................3, 5

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 554 (2007)...........................................................................................4, 5, 9, 10

*Bissessur v. Ind. Univ. Bd. of Trs.*,
 581 F.3d 599 (7th Cir. 2009) .......................................................................................5

*Blackman v. Lincoln Nat'l Corp.*,
 2012 WL 6151732 (E.D. Pa. Dec. 10, 2012)............................................................12

*Clay v. Little Co. of Mary Hosp.*,
 277 Ill. App. 3d 175 (Ill. App. Ct. 1995) ...................................................................8

*Corwin v. Conn. Valley Arms, Inc.*,
 74 F. Supp. 3d 883 (N.D. Ill. 2014) ..........................................................................10

*Dur–Ite Co. v. Industrial Comm'n*,
 68 N.E.2d 717 (1946)................................................................................................10

*Epstein v. Epstein*,
 843 F.3d 1147 (7th Cir. 2016) ....................................................................................8

*Forrest v. Universal Sav. Bank, F.A.*,
 507 F.3d 540 (7th Cir. 2007) ......................................................................................9

*Hill v. Shobe*,
 93 F.3d 418 (7th Cir. 1996) ......................................................................................10

*Landau v. CNA Fin. Corp.*,
 886 N.E.2d 405 (Ill. App. 2008) .........................................................................11, 12

*Landis v. Marc Realty, L.L.C.*,
  235 Ill. 2d 1 (Ill. 2009)......................................................................................................6

*Longaker v. Boston Sci. Corp.*,
  872 F. Supp. 2d 816 (D. Minn. 2012) *aff'd*, 715 F.3d 658 (8th Cir. 2013) ............................12

*Melvin v. Big Data Arts, LLC*,
  No. 1:21-cv-02194 (N.D. Ill. April 23, 2021)......................................................................2

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. 2017) ....................................................................................11

*Estate of Moreland v. Dieter*,
  576 F.3d 691 (7th Cir. 2009) ...............................................................................................7

*Newsom v. Friedman*,
  1995 WL 76869 (N.D. Ill. Feb. 17, 1995) ...........................................................................6

*Phillips v. Prudential Ins. Co. of Am.*,
  714 F.3d 1017 (7th Cir. 2013) .............................................................................................9

*Refined Metals Corp. v. NL Indus. Inc.*,
  937 F.3d 928 (7th Cir. 2019) ...............................................................................................7

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...............................................................................11

*Rogers v. CSX Intermodal Terminals, Inc.*,
  409 F. Supp. 3d 612 (N.D. Ill. 2019) .................................................................................10

*Rossy v. Merge Healthcare Inc.*,
  169 F. Supp. 3d 774 (N.D. Ill. 2015) .................................................................................11

*Schalk v. Reilly*,
  900 F.2d 1091 (7th Cir. 1990) .............................................................................................7

*Sekura v. Krishna Schaumberg Tan, Inc.*,
  2017 WL 1181420 (Ill. Cir. Ct. Feb. 09, 2017) ...................................................................6

*Sekura v. Krishna Schaumburg Tan, Inc.*,
  2018 IL App (1st) 180175 (Ill. App. Ct. Sept. 28, 2018).....................................................6

*Sharbaugh v. First Am. Title Ins. Co.*,
  2007 WL 3307019 (N.D. Ill. Nov. 2, 2007) ..................................................................1, 11

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) .............................................................................................10

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
    390 F. Supp. 3d 892 (N.D. Ill. 2019) ...................................................................................12

*W. Bend Mut. Ins. Co. v. Schumacher*,
    844 F.3d 670 (7th Cir. 2016) ..................................................................................................9

*United States ex rel. Walner v. NorthShore Univ. Healthsystem*,
    660 F. Supp. 2d 891 (N.D. Ill. 2009) ...................................................................................10

*West v. Louisville Gas & Elec. Co.*,
    2018 WL 321686 (S.D. Ind. Jan. 8, 2018), *aff'd,* 951 F.3d 827 (7th Cir. 2020) .......................8

**Statutes**

Illinois Biometric Privacy Act, 740 ILCS 14/15 ................................................................6, 7, 10

Illinois Genetic Information Privacy Act, 410 ILCS 513 ...................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 4, 12

**INTRODUCTION**

Plaintiff's lawsuit advances an ambitious legal theory: the acquisition of a business that lawfully obtains genetic information from consenting consumers creates liability for the business's acquirer under the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA" or "the Act"). Specifically, Plaintiff alleges that through its funds' acquisition of Ancestry.com DNA, LLC ("Ancestry"), The Blackstone Group Inc.[1] ("Blackstone") obtained consumers' genetic information in violation of GIPA. By basing her suit exclusively on this fact—along with improper (and wholly incorrect) speculation about what Ancestry and Blackstone may do with customer genetic information—Plaintiff's allegations attempt to stretch GIPA well past its written or intended scope. The Court should dismiss Plaintiff's complaint under Rule 12(b)(6).

*First*, Plaintiff has failed to plead a statutory violation of GIPA. By its plain language, the Act prohibits the disclosure or release of genetic information, not (as Plaintiff contends) the acquisition or possession of such information. To hold a defendant liable based on alleged acquisition or possession of genetic information would conflict with GIPA's plain language and meaning. Moreover, holding an entity liable based solely on its acquisition of a genetic testing company would chill investments in such companies and defeat GIPA's stated purpose of promoting the availability and use of genetic tests.

Nor has Plaintiff sufficiently alleged that Blackstone disclosed or used—or came to possess—any of Ancestry's genetic testing results. In fact, the very source Plaintiff references in her Complaint makes clear that Blackstone has not sold any data from any of its portfolio companies.

---

[1] As of August 6, 2021, The Blackstone Group Inc. is now "Blackstone Inc."

*Second*, and independently, because GIPA does not apply extraterritorially, Plaintiff cannot state any claim under the Act where, as here, she does not allege that Blackstone's purported statutory violations occurred "primarily and substantially" in Illinois. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).

## BACKGROUND

### A.  Statutory Background

The Illinois Legislature originally passed GIPA in 1998 to balance the well-recognized "valu[e]" of genetic testing with the "fear that test results will be disclosed without consent." 410 ILCS 513/5(2).[2] GIPA was enacted to address Illinoisans' concern that if test results were not confidential, "[a]n employer or an insurance carrier [could] obtain that information … and could discriminate on employment or price or coverage."[3] Recognizing the "achievement[s]" of genetic testing and intending "for people to be encouraged to receive DNA tests,"[4] the Act was passed to serve public health by "facilitating voluntary and confidential nondiscriminatory use of genetic testing." Compl. ¶ 6.

The statute recognizes the confidential nature of genetic testing and information derived from genetic testing, and it prohibits the "release[]" of such information to unauthorized individuals. 410 ILCS 513/15(a). In addition, it prohibits the "disclos[ure]" of the "identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test." 410 ILCS 513/30. In line with the purpose and intent of the statute, the statute explicitly restricts the use of genetic testing information by

---

[2] Of note, despite the fact that GIPA has been in existence for over two decades, Defendant is aware of only one other suit (filed earlier this year) based on a purported violation of this statute. *See Melvin v. Big Data Arts LLC*, No. 1:21-cv-02194 (N.D. Ill. April 23, 2021).

[3] Ex. 1, Ill. House of Rep., 90th Gen. Assemb. at 183 (April 15, 1997) (statement of Rep. Moffitt).

[4] *Id*. at 191, 194 (statements of Reps. Brady, Schakowsky).

2

employers and insurers; other sections make special exceptions allowing for the use of such material for health care operations, paternity testing, criminal investigations, and other legal proceedings. *See, e.g.* 410 ILCS 513/15(b), 20, 22, 25, 31. Critically, GIPA does not prohibit the mere possession or acquisition of genetic data.

### B. Hogan's Allegations

As Plaintiff alleges, Ancestry is a "global leader in digital family history services, allowing customers to gain a new level of understanding about their family and genetic history through the use of family trees, historical records, and genetic information." Compl. ¶ 14. As part of these services, Ancestry markets and sells at-home DNA test kits directly to consumers. *Id.* ¶ 24. Through these at-home kits, consumers simply provide a sample of their saliva (containing their DNA) and ship the test kit back to Ancestry; Ancestry next "sequence[s]" the genetic material and then provides consumers with detailed information "about their heritage and health characteristics." *Id.* ¶¶ 1, 14, 15, 25. Plaintiff Sarah Hogan is one such consumer who "purchased an at-home DNA test kit from Ancestry" in May 2018. *Id.* ¶¶ 10, 24. As she puts it, she sent a biological sample "in the form of her saliva (and accompanying skin cells)" to Ancestry, and Ancestry then provided her with "information about her likely ethnic and national heritage." *Id.* ¶ 25.

In late 2020, funds managed by Blackstone acquired Ancestry. Blackstone "is one of the world's leading investment firms" which "seek[s] to create positive economic impact and long-term value for [its] investors, the companies [it] invest[s] in, and the communities in which [it] works."[5] Through its acquisition of Ancestry, Blackstone stated that "Ancestry's large network of

---

[5] Ex. 2, https://www.blackstone.com/press-releases/article/blackstone-to-acquire-ancestry-leading-online-family-history-business-for-4-7-billion/, cited in Compl. ¶ 15 (last visited 8/12/2021). Courts may take judicial notice of the full contents of materials cited in a complaint. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (holding court "was entitled to take notice of the full contents of the published articles referenced in the

highly engaged users, unique content, and scaled technology platform have made it a market leader" and that Blackstone "look[ed] forward to contributing [its] resources" to "further accelerate Ancestry's growth."[6]

Plaintiff asserts one cause of action, alleging Blackstone has violated GIPA. Compl. ¶¶ 38–47. Despite its length, the bulk of Plaintiff's complaint essentially boils down to a single allegation: through its acquisition of Ancestry, Blackstone "obtained" Plaintiff's and the putative class's genetic information without their consent. Compl. ¶¶ 20, 29. Plaintiff alleges that this resulted in Blackstone violating GIPA. Plaintiff purports to represent a class of "[a]ll Illinois individuals whose genetic testing and information derived from their genetic testing was obtained by Defendant." *Id*. ¶ 30.

## **LEGAL STANDARD**

Rule 12(b)(6) requires dismissal when a complaint lacks allegations of fact that, if true, would enable the court to infer a defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). Instead, "a plaintiff has the obligation to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a

---

complaint, from which the truncated quotations were drawn"); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (holding court could consider materials cited in complaint, and plaintiffs' argument to the contrary was "frivolous").

[6] Ex. 2, https://www.blackstone.com/press-releases/article/blackstone-to-acquire-ancestry-leading-online-family-history-business-for-4-7-billion/.

4

'formulaic recitation of a cause of action's elements will not do.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 547).

When ruling on a 12(b)(6) motion, a court should disregard allegations in the form of legal conclusions. *Iqbal*, 556 U.S. at 678; *Adams*, 742 F.3d at 728. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Where, as here, the complaint lacks non-conclusory facts from which a court could infer an entitlement to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal citations omitted).

## ARGUMENT

### I. PLAINTIFF HAS NOT SUFFICIENTLY PLED A VIOLATION OF GIPA.

To state a claim under GIPA, Plaintiff must allege that Blackstone either: (1) "released" her "genetic testing [or] information derived from genetic testing" to unauthorized persons, *see* 410 ILCS 513/15(a); or (2) "disclose[d]" the "identity of any person upon whom a genetic test is performed or the results of a genetic test in a manner that permits identification of the subject of the test" to unauthorized persons. *See* 410 ILCS 513/30(a). Plaintiff fails to adequately allege either (nor could she).

#### A. GIPA Does Not Prohibit "Obtaining" Genetic Information.

Plaintiff's complaint rests on her claim that Blackstone violated GIPA when it purportedly "obtained" her genetic information by purchasing Ancestry. *See, e.g.*, Compl. ¶ 29 ("[A]s a result of its acquisition of Ancestry.com, Defendant Blackstone illegally obtained the genetic information of thousands of Illinois consumers without their written consent, including that of Plaintiff and the other Class members, in violation of GIPA."); *see also id.* ¶¶ 20, 23, 43, 45. Even if taken as true (which it is not), such allegations fail to state a claim under GIPA.

5

In Illinois, "[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (Ill. 2009). "The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning." *Id*. "When the statute's language is clear, the text controls." *Newsom v. Friedman*, 1995 WL 76869, at *2 (N.D. Ill. Feb. 17, 1995) (Kocoras, J.). Here, the express language of GIPA is clear. It restricts only the ***disclosure*** or ***release*** of information to unauthorized persons. *See* 410 ILCS 513/15(a) and 410 ILCS 513/30(a).

Contrary to Plaintiff's assertion that "GIPA provides that persons, such as Defendant, may not obtain genetic testing and information derived from genetic testing unless specifically authorized in writing," Compl. ¶ 3, no provision of GIPA actually prohibits ***obtaining*** genetic information. In fact, GIPA expressly addresses persons who happen to obtain or acquire protected information, and provides that such persons "to whom the results of a test have been disclosed" may not "disclose the test results to another person except as authorized under this Act." 410 ILCS 513/35. Thus, the plain language of the statute indicates the legislature clearly contemplated that entities may indirectly obtain genetic tests and thus intended to prohibit only the ***disclosure*** of information, not "obtaining" or acquiring it.

This is further confirmed by comparing GIPA to a similar Illinois privacy statute, the Illinois Biometric Privacy Act ("BIPA"). Unlike GIPA, BIPA ***does*** restrict "obtaining" certain information. Specifically, Section 15(b) of BIPA states "[n]o private entity may collect, capture, purchase, receive through trade, or ***otherwise obtain***" biometric data without informed written consent. 740 ILCS 14/15(b) (emphasis added). As Illinois courts have noted, BIPA and GIPA are "similar statutes" which were "considered and amended during the same legislative session." *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 17 (Ill. App. Ct. Sept. 28,

2018) (quoting *Sekura v. Krishna Schaumberg Tan, Inc.*, 2017 WL 1181420, at *2 (Ill. Cir. Ct. Feb. 09, 2017)). Thus, clearly, the Illinois legislature "knows how to [restrict 'obtaining' data] when it wants to do so." *Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir. 2009). *See also Refined Metals Corp. v. NL Indus. Inc.*, 937 F.3d 928, 932 (7th Cir. 2019) ("[W]here Congress includes particular language in one section of a statute but omits it in another … , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citation omitted). Thus, it should be presumed that the Illinois legislature "act[ed] intentionally and purposely" in its decision to restrict "obtaining" data in BIPA, and to exclude such a provision in GIPA.

Lastly, Plaintiff's ambitious and novel legal theory, if accepted, would undermine the express purpose of GIPA: to "facilitat[e] voluntary and confidential nondiscriminatory use of genetic testing information." 410 ILCS 513/5(3). Indeed, during the floor debate, Illinois Representatives recognized that genetic testing "is a blessing, . . . an achievement . . . a thing to rejoice over."[7] Thus, the statute was aimed at "encourag[ing]" people "to receive DNA tests," without fear that their employer or insurer would discriminate against them based on the results.[8] Applying GIPA to an entity (notably, not an employer or insurer) that merely invested in a company that makes genetic testing available to the masses—as Plaintiff seeks to do—would directly contravene the legislature's clear intent and the express purpose of the Act. Worse, such an application (or misapplication) of the statute could have a chilling effect on future investments in the "achievement" and advancements of genetic testing, limiting the availability of genetic testing for Illinois citizens. Such a sweeping and unfounded application of GIPA should not be

---

[7] Ex. 1, Excerpt from Ill. House of Rep., 90th Gen. Assemb. at 194 (April 15, 1997) (statement of Rep. Schakowsky).

[8] *Id*. at 191 (statement of Rep. Brady).

permitted. *See, e.g.*, *Schalk v. Reilly*, 900 F.2d 1091, 1096 (7th Cir. 1990) (affirming dismissal in part because legislative history of statute at issue supported defendant's interpretation); *West v. Louisville Gas & Elec. Co.*, 2018 WL 321686, at *4 (S.D. Ind. Jan. 8, 2018) (granting defendant's motion to dismiss because defendant's interpretation of the relevant statute "better comport[ed] with Congress' intent" and the legislative history), *aff'd,* 951 F.3d 827 (7th Cir. 2020).

In short, Plaintiff's allegations that Blackstone "obtained" genetic information cannot possibly state a claim because, setting aside the fact that such conduct did not actually occur, it is not prohibited by the text or purpose of GIPA. *See, e.g.*, *Epstein v. Epstein*, 843 F.3d 1147, 1152 (7th Cir. 2016) (affirming in part dismissal of claim where plaintiff merely alleged defendant "intended to use" information but relevant statute "does not prohibit inchoate intent"); *Clay v. Little Co. of Mary Hosp.*, 277 Ill. App. 3d 175 (Ill. App. Ct. 1995) (affirming dismissal of complaint where plaintiff alleged defendant hospital failed to permit plaintiffs to personally copy their records because statute did not require that).

### B. Plaintiff Does Not Allege Any Improper Disclosure By Blackstone.

Tellingly, Plaintiff does not plead as part of her single cause of action that Blackstone disclosed or released genetic information in violation of GIPA. Compl. ¶¶ 38–47. In that section, Plaintiff confines her allegations to conclusory assertions about "obtaining" information through acquiring Ancestry. *See id.*

Elsewhere, Plaintiff obliquely suggests (in a single paragraph) that "Blackstone sought to purchase Ancestry, obtain Plaintiff and the Class' genetic information, and then share such information with affiliates of Defendant if not other third-parties to monetize its acquisition." Compl. ¶ 16. Beyond pointing to Blackstone's regulatory filings that reference general data sharing agreements—which have nothing to do with genetic information (or Ancestry)—she provides no further support for this stray and demonstrably false allegation. *See id.*

8

As a preliminary matter, Plaintiff does not allege that Blackstone actually obtained Ancestry data and then released it to any third parties. Rather, she merely pleads an unsupported assumption about Blackstone's motivation for acquiring Ancestry and alleged future plans. The stray paragraph in the Complaint makes no reference to Ancestry data at all, nor does it allege that any data has actually been shared. Plaintiff essentially alleges that Blackstone acquired Ancestry, and thus must have obtained Ancestry's customers' genetic test results. *See, e.g.*, Compl. ¶ 29. To then infer from this allegation that such information was (or will be) shared with third parties is an even further assumption requiring speculation, which is not enough to state a claim. *See, e.g.*, *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 679 (7th Cir. 2016) (affirming dismissal of complaint because it "leaves [the court] to speculate" and failed to "suggest a right to relief that is beyond the speculative level") (internal citations omitted).

Further, Plaintiff's speculation is actually belied by the very document she cites.[9] In support of her allegation that Blackstone's "effort to repackage and sell such information to unaffiliated third-parties is underway," Compl. ¶ 16, Plaintiff cites an article from Bloomberg. But the article makes no mention of Ancestry or its genetic data.[10] More importantly, the article clearly states that any consideration of selling data (again, not discussing Ancestry data) was merely "exploratory," and that "*nothing has been sold on behalf of our portfolio companies or*

---

[9] When material referenced in the complaint contradicts the complaint's allegations, the exhibit controls. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."); *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

[10] *See* Ex. 3, www.bloomberg.com/news/articles/2020-12-15/blackstone-s-next-product-could-be-data-from-companies-it-buys (last visited 8/12/2021).

9

*Blackstone*."[11] Put another way, the article unequivocally states that Blackstone has not sold ***any*** data from ***any*** of its portfolio companies. Full stop.

As a result, Plaintiff's sole allegation related to—and, in fact, only mention of—improper disclosure cannot be taken as true, and fails to state a claim under GIPA.[12]

## II. PLAINTIFF CANNOT APPLY GIPA EXTRATERRITORIALLY.

In addition, Plaintiff's complaint should be dismissed in its entirety because it requires application of a state statute, not intended to apply outside of Illinois, to alleged extraterritorial conduct. The Illinois Supreme Court has repeatedly held that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, 835 N.E.2d at 852 (quoting *Dur–Ite Co. v. Indus. Comm'n*, 68 N.E.2d 717 (1946)). None of GIPA's express provisions indicates that the Act was intended to have extraterritorial effect.[13]

---

[11] *Id.* (emphasis added).

[12] Even if Plaintiff had sufficiently alleged disclosure, her claim would fail for another, independent reason. Plaintiff has not included *a single* allegation—even conclusory or rote recitation—that Blackstone acted negligently, recklessly, or intentionally—a necessary element to state a claim for damages under GIPA. *See* 410 ILCS 513/40 (allowing liquidated or actual damages for negligent, reckless, or intentional conduct). Accordingly, Plaintiff has failed to plead a necessary element, which dooms her damages claim. *See Twombly*, 550 U.S. at 570; *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("A conclusory allegation of recklessness, however, is insufficient to defeat a motion to dismiss."); *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618–19 (N.D. Ill. 2019) ("[Plaintiff's] conclusory statement of [defendant's] intent is insufficient to allow us to infer that [defendant] acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15.") (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)); *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 889 (N.D. Ill. 2014) (dismissing complaint where Plaintiff failed to show "that his negligence claim … is 'plausible, rather than merely speculative'") (citation omitted). Moreover, the complaint also states that Plaintiff, on her "own behalf, and on behalf of the proposed Class," "seeks an injunction requiring Defendant to comply with GIPA." Compl. ¶ 9. The complaint, however, fails to allege an inadequate legal remedy, so Plaintiff is not entitled to an injunction as a matter of law. *See United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F. Supp. 2d 891, 900 (N.D. Ill. 2009) (dismissing complaint for injunctive relief where plaintiff alleged "no facts supporting his claim for injunctive relief and instead just concludes that injunctive relief is warranted").

[13] Indeed, multiple federal courts have found that BIPA—which, as noted above, was considered and amended during the same legislative session as GIPA and thus presumably was drafted with the same framework in mind—is without extraterritorial effect for this reason. *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. 2017); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).

10

Thus, to be actionable against a foreign company like Blackstone—incorporated in Delaware and headquartered in New York[14]—Blackstone must have violated GIPA *within Illinois*. This means Plaintiff must show that Blackstone's alleged violations of GIPA "occur[red] *primarily and substantially*" in Illinois. *Avery*, 835 N.E.2d at 854 (emphasis added); *see also Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008) (affirming dismissal where "the majority of circumstances relating to the alleged violation of the [statute]" occurred outside the state).

Plaintiff's complaint fails to plead that Blackstone engaged in **any conduct** in Illinois. Indeed, the only connection to Illinois here is the alleged residency of the plaintiff—she claims to reside in Kane County, Illinois. Compl. ¶ 10. But Plaintiff fails to plead that she was in Illinois when she purchased and used her DNA test kit from Ancestry. *See id.* ¶¶ 24-29. She further fails to limit the putative class to individuals located in Illinois when they purchased and used DNA test kits from Ancestry. *See id.* ¶ 30. Instead, she defines the class simply as all "Illinois individuals" whose information was "obtained by Defendant"—regardless of **where** those individuals were when they purchased and used the DNA test kit. Put simply, Plaintiff does not even allege that her or the putative class's interactions with **Ancestry** (let alone **Blackstone**) took place in Illinois.

More importantly, Plaintiff does not allege that her purported injuries stem from her submission of genetic testing material to Ancestry—she concedes she did that willfully and voluntarily, without issue or complaint. Compl. ¶ 24–25. Rather, Plaintiff's alleged injuries stem from Blackstone's subsequent acquisition of Ancestry, which she claims resulted in the unauthorized transfer of her genetic data from Ancestry to Blackstone. But Plaintiff does not

---

[14] *See* Compl. ¶ 11; Ex. 4, The Blackstone Group Inc., Current Report (Form 8-K) (July 22, 2021) (listing address of principal executive offices in New York, New York). Courts have concluded that judicial notice may be taken of the contents of public record disclosure documents filed with the SEC if the facts sought to be noticed are not subject to dispute. *See, e.g., Rossy v. Merge Healthcare Inc.*, 169 F. Supp. 3d 774, 777 (N.D. Ill. 2015) ("The following facts are drawn from the allegations in plaintiffs' Consolidated Amended Complaint . . . and, where noted, from other materials properly before me, including Merge's SEC filings."); *Sharbaugh v. First Am. Title Ins. Co.*, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (taking judicial notice of statements in Form 10–K that were not in dispute).

allege that the purported transfer of data took place in Illinois. For good reason: Ancestry is headquartered in Lehi, Utah[15]—over 1,200 miles west of the Illinois border. And as noted above, Blackstone operates out of New York City. Plaintiff has made no attempt, whatsoever, to allege that *any* conduct by Blackstone took place in Illinois.

Without more, Plaintiff cannot show that Blackstone's purported violations of GIPA occurred anywhere near Illinois, let alone "primarily and substantially" in the state. Thus, Plaintiff's claim must be dismissed. *See, e.g.*, *Landau*, 886 N.E.2d at 409; *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 911 (N.D. Ill. 2019) (dismissing claim for violation of Illinois statute where plaintiff failed to allege conduct that occurred "primarily and substantially in Illinois"); *cf. Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *2-3 (E.D. Pa. Dec. 10, 2012) (dismissing claim under the Pennsylvania Human Relations Act because the "discriminatory practice" took place outside of Pennsylvania); *Longaker v. Boston Sci. Corp.*, 872 F. Supp. 2d 816, 819–20 (D. Minn. 2012) *aff'd*, 715 F.3d 658 (8th Cir. 2013) (dismissing claim under Minnesota Human Rights Act as an impermissible extraterritorial application).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice in its entirety under Rule 12(b)(6) because Plaintiff has not—and cannot—allege any viable claim against Blackstone.

---

[15] Ex. 5, Ancestry.com LLC, Current Report (Form 8-K) (Oct. 7, 2016) (listing address of principal executive officers in Lehi, Utah).

Dated: August 12, 2021            Respectfully submitted,

By:   */s/ Martin L. Roth*
      Martin L. Roth
      Alyssa C. Kalisky
      Amelia H. Bailey
      KIRKLAND & ELLIS LLP
      300 North LaSalle
      Chicago, IL 60654
      (312) 862-2000
      (312) 862-2200
      martin.roth@kirkland.com
      alyssa.kalisky@kirkland.com
      amelia.bailey@kirkland.com

*Counsel for The Blackstone Group Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on August 12, 2021, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ *Martin L. Roth*
Martin L. Roth